## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICA FIRST LEGAL FOUNDATION,
611 Pennsylvania Avenue SE #231
Washington, DC 20003

*Plaintiff,*

v.

DEPARTMENT OF JUSTICE,
950 Pennsylvania Avenue NW
Washington, DC 20530


DEPARTMENT OF STATE,
2201 C Street NW
Washington, DC 20520


DEPARTMENT OF HOMELAND SECURITY,
2707 Martin Luther King Jr Ave SE
Washington, DC 20528

*Defendants*

Civil Action No.: 23-1948

## COMPLAINT

(For Violation of the Freedom of Information Act)


## I.   INTRODUCTION

1.     On December 9, 2019, the FBI issued a subpoena for and took possession of Hunter Biden's laptop from a Delaware computer store owner.

2.     On May 20, 2020, the Senate Homeland Security and Governmental Affairs Committee voted to subpoena a lobbying firm that worked with Burisma, a

1

Ukrainian company that paid Hunter Biden to serve on its board. *See U.S. Senate Committee Issues Subpoena in Probe of Hunter Biden's Ukraine Ties*, RADIO FREE EUROPE / RADIO LIBERTY (May 21, 2020), https://bit.ly/3jlR76n.

3.      On July 13, 2020, then-Minority Leader Schumer, Sen. Mark Warner, Speaker Pelosi, and Rep. Adam Schiff sent a letter with a classified attachment to the FBI claiming that Congress was the subject of a Russian disinformation campaign. The classified attachment included unclassified elements that, among other things, attempted to tie the Senate investigation into the Biden family's financial deals to Russian disinformation. Those elements were then leaked to the press. *See* Letter from Sen. Charles E. Grassley*,* Ranking Member, and Sen. Ron Johnson, S. Comm. on the Judiciary to Merrick Garland, Attorney General and Christopher Wray, Director, Federal Bureau of Investigation, (Aug. 25, 2022), *at* n.6, https://www.grassley.senate.gov/imo/media/doc/grassley_johnson_to_fbi_-_august_2020_briefing.pdf (*citing* Letter from Senator Ron Wyden, Ranking Member S. Comm. on Fin., and Ranking Member Gary Peters, S. Comm. on Homeland Sec. and Governmental Aff. to Chairman Grassley, S. Comm. on Fin., and Chairman Ron Johnson, S. Comm. on Homeland Sec. and Governmental Aff. (July 16, 2020))).

4.      On July 15, 2020, FBI Supervisory Special Agent Elvis M. Chan offered Twitter temporary security clearances "30 days out from the election." *See* Michael Shellenberger,, (@michaelshellenberger), TWITTER, (Dec. 19, 2022, 11:09 AM), bit.ly/3Wl8anx (last visited Jun. 29, 2023).

5.      On July 16, 2020, then-Ranking Member Peters and then-Ranking Member Wyden requested a briefing from the FBI's Foreign Influence Task Force on matters purportedly relating to the Biden investigation.  *See* Letter from Sen. Charles E. Grassley and Sen. Ron Johnson, August 25, 2022, supra n.6.

6.      On July 23, 2020, Politico published an article alleging a "foreign disinformation plot to damage former vice president Joe Biden" based on "a farcical, long-debunked, hardcore right-wing conspiracy theory" of Biden family corruption. According to Politico, Democrat concerns were triggered by the prospect of "foreign interference in the 2020 race and fear of *another Kremlin-led effort to boost Trump's reelection prospects.*" *See* Natasha Bertrand, *Democrats: Packets Sent to Trump Allies are Part of Foreign Plot to Damage Biden*, POLITICO (Jul. 23, 2020), https://bit.ly/3j0yfcJ (emphasis added).

7.      This was one part of a much broader information operation by, *inter alia*, certain government officials to use the "Russian disinformation" claim for the purpose of falsely discrediting independent inquiries into the Bidens' foreign entanglements. *See, e.g.,* Ryan Goodman and Asha Rangappa, *How Sen. Ron Johnson's Investigation Became an Enabler of Russian Disinformation: Part I*, JUST SECURITY (Aug. 11, 2020), https://bit.ly/3v9fdDZ; *see also,* Asha Rangappa and Ryan Goodman, *Manafort's Reward: Sen. Ron Johnson and the Ukraine Conspiracy Investigation: Part II*, JUST SECURITY (Aug. 24, 2020), https://bit.ly/3FOnjXl.

8.      On August 6, 2020, FBI employees Nikki Floris and Bradley Benavides conducted the subject briefing. It consisted primarily of information known to Senate

investigators and certain other information unrelated to the Biden investigation. The briefing did not include an update on an investigation or even apparently a disclosure that the FBI had Hunter Biden's laptop in its possession. (*See* Letter from Sen. Charles E. Grassley and Sen. Ron Johnson, August 25, 2022, *supra*.)

9.      Verified and verifiable derogatory information on Hunter Biden was falsely labeled by the FBI, a component of the defendant Department of Justice, as disinformation. *See* Letter from Sen. Charles E. Grassley, Ranking Member, and Sen. Ron Johnson, S. Comm. on the Judiciary to Merrick Garland, Attorney General and Christopher Wray, Director, Federal Bureau of Investigation, at 1 (July 25, 2022), https://bit.ly/3SsmMA6.

10.      On or before October 13, 2020, the FBI warned Facebook to be on "high alert" relating to a "Russian propaganda dump," an apparent reference to the Biden laptop, which had been in the FBI's possession for almost one year. *See* Joseph A. Wulfsohn, *Mark Zuckerberg Tells Joe Rogan FBI Warned Facebook of 'Russian Propaganda' Before Hunter Biden Laptop Story*, Fox News (Aug. 25, 2022), https://bit.ly/3FWxZ7S.

11.      FBI whistleblowers further allege that the FBI did not begin to examine the laptop's contents until after the 2020 presidential election. *See* Brianna Herlihy, *FBI Met Weekly with Big Tech Ahead of the 2020 Election, Agent Testifies*, Fox News (Dec. 3, 2022), https://fxn.ws/3j6Hatr; *See also, Letter from Sen. Ron Johnson to the Hon. Michael E. Horowitz* at 2 (Aug. 23, 2022) (cleaned up), https://bit.ly/3WfIhFk.

12.     On October 14, 2020, the New York Post reported strong evidence, in the form of emails from the laptop hard drive, of quid-pro-quo political corruption and influence peddling by then-candidate and former Vice President Joe Biden. The emails demonstrated that in or about April 2014, Hunter Biden, a person without any energy industry background or expertise whatsoever, was given a board seat by a Ukrainian gas company called Burisma. Burisma made $83,333 payments monthly to Hunter Biden's company.   Hunter Biden reportedly received $1.5 million in total. Also, Burisma appears to have paid an additional $1.5 million to a Hunter Biden business associate. *See Devon Archer,* Mattathias Schwartz, *The National Archives Wants to Release Hundreds of Pages of Emails about Hunter Biden and Burisma — and the White House Won't Say Whether It Will Let It Happen*, INSIDER (Dec. 14, 2022), bit.ly/3PJ5620.

13.     In turn, Hunter Biden introduced then-Vice President Biden to a top Burisma executive. *Id.* Shortly thereafter, Joe Biden pressured Ukrainian government officials into firing a prosecutor investigating Burisma by threatening to cancel a $1 billion U.S. loan guarantee. *See* Emma-Jo Morris and Gabrielle Fonrouge, *Smoking-gun email reveals how Hunter Biden introduced Ukrainian businessman to VP dad*, The New York Post (Oct. 14, 2020), https://bit.ly/3HDUUpE.

14.     On October 15, 2020, the Hill linked Hunter Biden's laptop to an alleged Russian influence campaign to pass misinformation to President Trump. Citing an anonymous source, the Hill reported, "Several senior administration officials, including Attorney General William Barr, FBI Director Christopher Wray and White

House counsel Pat Cipollone 'all had common understanding' that Russia was targeting the president's personal lawyer." *See* Justine Coleman, *Intelligence officials warned Trump that Giuliani was target of Russian influence campaign: report*, The Hill (Oct. 15, 2020), https://bit.ly/3WzHaQV.

15.    On October 15, 2020, NBC reported that "Federal investigators are examining whether emails allegedly describing activities by Joe Biden and his son Hunter and found on a laptop at a Delaware repair shop are linked to a foreign intelligence operation" based on claims made by "two people familiar with the matter"; and that the evidence of Biden corruption was "greeted with widespread skepticism." *See* Ken Dilanian, *Feds examining whether alleged Hunter Biden emails are linked to a foreign intel operation. One email, which has not been confirmed to be authentic, suggested a meeting between Joe Biden and a rep from a Ukraine firm that once paid his son Hunter*, NBC News (Oct. 15, 2020), https://bit.ly/3BOh5FZ.

16.    On October 16, 2020, CNN reported, under six bylines, that "US authorities are investigating whether the published emails that purport to detail the business dealings of Joe Biden's son in Ukraine and China are connected to an ongoing Russian disinformation effort targeting the former vice president's campaign, a US official and a congressional source briefed on the matter said." *See* Marshall Cohen, Zachary Cohen, Michael Warren, Evan Perez, Alex Marquardt, and Mark Morales, *US authorities investigating if recently published emails are tied to Russian disinformation effort targeting Biden*, CNN (Oct. 16, 2020), https://bit.ly/3PGVVP TCNN.) It declared that "Giuliani has openly coordinated with a known Russian

6

agent to promote disinformation about the Bidens" and that "[t]he FBI is leading the investigation." *Id.*

17.     Also, on October 16, 2020, House Intelligence Committee Chairman Adam Schiff claimed that Hunter Biden's laptop was a Russian disinformation campaign. *See* Adam Shaw, *Adam Schiff claims Hunter Biden email stories come 'from the Kremlin'*, Fox News (Oct. 17, 2020), https://bit.ly/3V5Lczg.

18.     "*We know that this whole smear on Joe Biden comes from the Kremlin*," Schiff said, "*That's been clear for well over a year now that they've been pushing this false narrative about this vice president and his son. Clearly, the origins of this whole* smear are from the *Kremlin, and the president is only too happy to have Kremlin help and try to amplify it.*" *Wolf Blitzer, @CNNSitRoom, Twitter, CNN.com (*Oct. 16, 2020), *bit.ly / 3NxGEQB (emphasis added).*

19.     Also on October 16, 2020, a Twitter executive noted "well-timed briefings from Gov't sources…which would support an assessment that [the laptop is] neither whistleblower nor dissident content." *See* Michael Shellenberger, (@michaelshellenberger), Twitter, (Dec. 19, 2022, 11:09 AM), bit.ly/3Wl8anx (last visited Jun. 29, 2022).

20.     Former Intelligence Official Baker insisted on an internal email that the Hunter Biden laptop evidence was faked and/or hacked, *See* Michael Shellenberger (@michaelshellenberger), Twitter, (Dec. 19, 2022, 11:09 AM)), bit.ly/3Wl8anx, and reportedly, reached out to Matthew Perry in the FBI's Office of General Counsel to coordinate a response. *Id.* at 39.

21.     On October 19, 2020, Politico released a letter from 51 former intelligence officials, including political partisans John Brennan, Jim Clapper, and Michael Hayden, alleging that "the arrival on the US political scene of emails purportedly belonging to Vice President Biden's son Hunter, much of it related to his time serving on the Board of the Ukrainian gas company Burisma, has all the classic earmarks of a Russian information operation." The 51 former intelligence officials further alleged that "For the Russians at this point, with Trump down in the polls, there is incentive for Moscow to pull out the stops to do anything possible to help Trump win and/or to weaken Biden should he win. A 'laptop op' fits the bill, as the publication of the emails are clearly designed to discredit Biden." The officials concluded that "Our view that the Russians are involved in the Hunter Biden email issue" was shared by "*Executive Branch departments and agencies* [and] *It is high time that Russia stops interfering in our democracy.*" Clapper, Brennan, et al, *Public Statement on the Hunter Biden Emails,* Politico (Oct. 19, 2020), https://bit.ly/3FPVfnV. (Emphasis in original).

22.     According to a December 2020 declaration by Twitter's "Head of Site Integrity":

> [F]ederal law enforcement agencies communicated that they expected "hack-and-leak operations" by state actors might occur in the period shortly before the 2020 presidential election, likely in October. I was told in these meetings that the intelligence community expected that individuals associated with political campaigns would be subject to hacking attacks and that material obtained through those hacking attacks would likely be disseminated over social media platforms, including Twitter. These expectations of hack-and-leak operations were discussed throughout 2020. I also learned in these meetings that there were rumors that a hack-and-leak operation would involve Hunter Biden.

*See* Robert K. Kelner Brendan Parets Elizabeth Upton COVINGTON & BURLING LLP Letter to Jeffrey S. Jordan, Federal Election Comm. (August 21, 2020), Exhibit A, (Declaration of Yoel Roth ¶11, FEC MUR7827 (Dec. 17, 2020), https://bit.ly/3PGUDUZ).

23.     On April 2, 2021, CBS reported that, "Months after it was alleged that a laptop revealed Hunter Biden's business interests in China and Ukraine, the president's son tells Tracy Smith that the laptop "could be" his."  *See* CBS Sunday Morning @CBSSunday, (April 2, 2021, 7:42 AM), TWITTER, bit.ly/445aVNB (last visited Jun. 29, 2023).

24.     On March 16, 2022, the New York Times reported that the contents of Hunter Biden laptop were authentic. *See* Katie Benner, Kenneth P. Vogel and Michael S. Schmidt, *Hunter Biden Paid Tax Bill, but Broad Federal Investigation Continues*, THE NEW YORK TIMES (Mar. 16, 2022), https://bit.ly/3PuwUHf.

25.     Nearly four out of five Americans, or 79 percent, believe that had there been "truthful" coverage of the Hunter Biden laptop, it would have changed the outcome of the 2020 presidential election. *See* Bruce Golding, *79% Say 'Truthful' Coverage of Hunter Biden's Laptop Would Have Changed 2020 Election,* THE NEW YORK POST (Aug. 26, 2022), https://bit.ly/3Vm6SaC; *see also* Jerry Dunleavy, *Barr says Hunter Biden Russian Disinformation Claims 'Probably Affected' Election Outcome*, THE WASHINGTON EXAMINER (Mar. 22, 2022), https://bit.ly/3jqg0Ol.

26.    On April 20, 2023, the House Judiciary Committee revealed that the letter from 51 former intelligence officials, alleging that "the arrival on the US political scene of emails purportedly belonging to Vice President Biden's son Hunter, much of it related to his time serving on the Board of the Ukrainian gas company Burisma, has all the classic earmarks of a Russian information operation," was the product of the Biden campaign through testimony from a former Biden campaign official. *See* Press Release, *New Testimony Reveals Secretary Blinken and Biden Campaign Behind the Infamous Public Statement on the Hunter Biden Laptop*, H. COMM. ON THE JUDICIARY (Apr. 20, 2023), https://bit.ly/41VyVkS.

27.    On May 10, 2023, the House Committee on Oversight and Accountability revealed evidence from subpoenaed bank documents showing that the Biden family, their associates, and their companies received over $10 million from foreign nationals and their related companies. *See* Press Release*, Comer Reveals New Evidence in Biden Family's Influence Peddling Schemes*, H. COMM. ON OVERSIGHT AND ACCOUNTABILITY (May 10, 2023), https://bit.ly/3Pwiit9.

28.    50 U.S.C. § 3093(f) expressly prohibits the intelligence community, including the FBI, from using covert actions intended to influence the U.S. political process:

> (f) Prohibition on covert actions intended to influence United States political processes, etc. No covert action may be conducted which is intended to influence United States political processes, public opinion, policies, or media.

50 USCS § 3093

## II.    AFL'S FOIA TO THE DEPARTMENT OF JUSTICE

29. On March 25, 2022, America First Legal Foundation ("AFL") filed a Freedom of Information Act request on March 25, 2022, for Department of Justice, (DOJ) communications about Hunter or Hunter Biden for a time period subsequent to February 21, 2022. *See* Exhibit 1, copy of AFL's March 25, 2022, FOIA to DOJ Office of Information Policy ("OIP").

30. On April 18, 2022, OIP acknowledged AFL's FOIA and identified it as U.S. Department of Justice FOIA-2022-00973:

> The records you seek require a search in and/or consultation with another Office, and so your request falls within unusual circumstances. See 5 U.S.C. 552(a)(6)(B)(i) - (iii) (2018). *Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute.*

*See* Exhibit 2, Acknowledgment Correspondence of April 18, 2022, from OIP at DOJ (emphasis added).

31. On April 20, 2022, AFL followed up via email correspondence to OIP at and explained that because it limited its request to a handful of custodians, for a limited time period, and only requested two search terms, there was a lack of clarity on the use of the complex track for this request.

> AFL's March 25[th] request provided a narrow set of custodians, requested documents that contained only two search terms, and provided a short time frame of February 1, 2022, to the date the request is processed for responsive documents.
>
> Can the Department please provide additional clarity explaining why AFL's request should be placed in the complex track? The custodians who are likely to hold responsive records are all located in offices for which the Office of Information Policy has control of the custodians' records. AFL provided a limited timeframe and only requested records containing two search terms. The narrow nature of the request should not trigger "unusual circumstances" and should not be placed in the Office of Information Policy's complex track.

*See* Exhibit 3, copy of AFL's April 20, 2022, Email correspondence to OIP.

32.     On April 27, 2022, OIP responded and explained that the search would be deemed complex because it involved more than one agency. *See* Exhibit 4, Copy of first April 27, 2022, Email from OIP.

33.     Also on April 27, 2022, OIP contacted AFL and requested whether AFL would consider further narrowing its request to one search term, (AFL had already agreed to narrow to eliminate any clippings or news articles returned as part of a search), explaining the search came back with an estimate of 8,000 emails, which would double if both terms were search. *See* Exhibit 5, Copy of second April 27, 2022, Email from OIP and follow up Emails of May 3, 2022, correspondences.

34.     On May 3, 2022, OIP followed up again with AFL, asking for the narrowing to one term, ["Hunter Biden"] to which AFL affirmatively responded, "yes," explaining that it agreed to narrowing the search to the one term, "Hunter Biden." *See Id*.

35.     Over a year later, with no response, on May 18, 2023, AFL sent a follow up request to OIP requesting a status update:

> I am writing to follow up on this now older request, Pending Freedom of Information Act Request, FOIA-2022-00973.  It was placed on the Complex Track back on 4/27/22.  We then received separate correspondence on April 27, 2022 seeking to narrow the request and follow up correspondence on May 3, 2022 seeking our consent to narrow the Request, so we agreed to "Hunter Biden" rather than just "Hunter" in the two search terms of our Request.

*See* Exhibit 6, Copy of Email correspondence to OIP on May 18, 2023.

36.     On the same day, May 18, 2023, OIP responded promptly, and curtly, that, "The records search for your request is still ongoing at this time." *See* Exhibit 7, Copy of Email Correspondence from OIP on May 18, 2022.

37.     Despite its efforts to work with OIP, AFL received an interim response over a year ago on April 27, 2022, first explaining that that it had placed AFL's request in its complex processing queue, and then OIP stating that it anticipated an estimate of "8,000" potentially responsive documents to the March 25, 2021, FOIA, if AFL agreed to narrow the request. *See* Exhibits 4 & 5.

38.     Despite AFL agreeing to significantly narrow the scope of its request, DOJ has continued to delay and to date, no response, rolling production or otherwise has been received.

39.     AFL's request is not overly broad or unduly burdensome. In its initial request, AFL only requested two search terms, a very narrow timeframe at the time: "February 1, 2022, to the date this item is processed" in a FOIA itself dated and sent on March 25, 2022. *See* Exhibit 1.

40.     Despite AFL's good faith efforts to narrow its request, DOJ has not produced anything, and most recently, on May 18, 2023, stated that (a search previously identified as potentially 8000 pages), was '*still ongoing.*' *See* Exhibits 5 and 7.

41.     To date, DOJ has not produced any records requested by AFL.

42.     DOJ has prevented AFL and the public from obtaining information vital to current and ongoing public debate of these critical matters in a timely fashion.

43.     The primary value of AFL's requested information lies in the near "real time" transparency it will provide to inform the ongoing debate on the topic. While information gained months or (more likely) years from now may still be of historical

value, stale information is of little value in these circumstances. *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

44.     Due to the political sensitivity of the requested records and based on AFL's knowledge and belief of the Biden Administration's operating procedures with respect to processing FOIA requests from non-ideologically aligned requestors, AFL is concerned that DOJ political appointees may be overseeing, supervising, and/or delaying the processing of AFL's request to keep the facts from public exposure and to prevent public scrutiny of controversial Biden Administration policies.

### III.    AFL's FOIA TO THE DEPARTMENT OF STATE

45.     On March 25, 2022, AFL filed a Freedom of Information Act request for records related to the role of the Department of State regarding any communications about Hunter or Hunter Biden for a time period subsequent to February 21, 2022. *See* Exhibit 8, copy of AFL's March 25, 2022, FOIA to the Department of State ("State").

46.     On March 28, 2022, State acknowledged the Request from AFL and assigned it a Reference Number F-2022-06504. *See* Exhibit 9, copy of State's Acknowledgement of the Subject FOIA.

47.     State averred that it placed this Subject Request in "the complex processing track where it will be processed as quickly as possible" citing CFR § 171.11(h). *Id*.

48.     State explained that "this Office will not be able to respond within 20 days due to "unusual circumstances." *Id*. (*citing* 5 U.S.C. § 552 (a)(6)(B)(i)-(iii)). It

alleged that "in this instance the unusual circumstances include the need to search from other Department offices or foreign service posts." *Id*.

49.     A year and two months later, on May 18, 2023, undersigned counsel wrote a request for follow up and offered to discuss narrowing the request in the event that it would be helpful. *See* Exhibit 10, copy of May 18, 2023, AFL correspondence to State.

50.     On May 26, 2023, State's FOIA Requester Center sent what appears to be an automated message not responding regarding the offer from undersigned counsel to discuss any narrowing of the request, but saying in relevant part, "The Office of Information Programs and Services electronic records system indicates this request remains in process. *See* Exhibit 11, copy of May 26, 2023, communication to AFL.

51.     To date, State has not responded to the subject FOIA, nor has it made any attempt to confer with counsel, or to produce a single responsive document much less any larger production on any rolling basis.

## IV.     AFL's FOIA TO THE DEPARTMENT OF HOMELAND SECURITY

52.     On March 25, 2022, AFL filed a Freedom of Information Act request for records related to the role of the Department of Homeland Security ("DHS") regarding any communications about Hunter or Hunter Biden for a time period subsequent to February 21, 2022. *See* Exhibit 12, copy of AFL's March 25, 2022, FOIA to DHS.

53.     On April 19, 2022, DHS acknowledged receipt of the Subject FOIA, assigned it a reference number 2022-HQFO-00797, and included the following

response, in relevant part, that, "DHS will invoke a 10-day extension for your request pursuant to 6 C.F.R. Part 5 § 5.5(c). If you would like to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner." *See* Exhibit 13, DHS' Acknowledgment E-mail Correspondence.

54.    On April 20, 2022, AFL wrote to the FOIA Office at DHS requesting a status update on the Subject FOIA. *See* Exhibit 14, AFL Email of April 20, 2022.

55.    That same day, at 2:06 PM, DHS responded to AFL explaining that the Request came back with "voluminous results" and requested a narrowing of the subject Request, stating further that "the Request will be placed on hold until we hear from you." *See* Exhibit 15, DHS follow up on Request of April 20, 2022.

56.    On that same day, April 20, 2022, at 3:16 PM, AFL promptly followed up in relevant part, with the following question: "Have you been able to review any of the data so far to confirm that 6.6 GB of data does not contain press clips or spot checked it to see that it does, in fact, contain significantly non-responsive material? If you have, we are willing to narrow the Request. However, without further information, we believe the request was sufficiently narrow[.]" *See* Exhibit 16, AFL response to DHS.

57.    On Monday, April 25, 2022, at 10:21 AM, DHS wrote AFL, "Confirming Receipt. OCIO has started the file transfer of the records." *See* Exhibit 17, DHS E-Mail to AFL on April 25, 2022.

58.    Upon hearing nothing further from DHS, undersigned counsel requested the documents and a status update, over a year later, on May 18, 2023.  To date, DHS has not responded. *See* Exhibit 18, AFL's E-Mail to DHS.

## V.    JURISDICTION AND VENUE

59.    The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201.

60.    Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## VI.    PARTIES

61.    The Plaintiff, America First Legal Foundation, is a nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and encourage public knowledge and understanding of the law and individual rights guaranteed under the United States Constitution and the laws of the United States.

62.    The Defendant, the Department of Justice, is an agency under 5 U.S.C. § 522(f), with its headquarters at 950 Pennsylvania Avenue NW, Washington, DC 20530. It has possession, custody, and control of the requested records, and has not produced a single page to date.

63.    The Defendant, the Department of State, is an agency under 5 U.S.C. § 522(f), with its headquarters at 2201 C Street NW, Washington, DC 20520.  It has possession, custody, and control of the requested records, and has not produced a single page to date.

64. The Defendant, Department of Homeland Security, is an agency under 5 U.S.C. § 522(f), with its headquarters at 2707 Martin Luther King Jr AVE SE, Washington, DC 20528. It has possession, custody, and control of the requested records, and has not produced a single page to date.

## VII. CLAIMS FOR RELIEF

### COUNT 1

For Violation of 5 U.S.C. § 552(a)

65. AFL repeats paragraphs 1-62.

66. AFL properly requested records within the possession, custody, and control of DOJ.

67. The requested records are not exempt from FOIA pursuant to 5 U.S.C. § 552(b)(5).

68. DOJ has continued to improperly withhold the responsive records under FOIA pursuant to 5 U.S.C. § 552(b)(5), with no further response to date.

69. Accordingly, AFL has exhausted its administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C).

70. The Defendant DOJ has violated FOIA by failing to provide a lawful reason for the withholding of the responsive records and segregate exempt information in otherwise non-exempt responsive records.

71. AFL should be granted declaratory and injunctive relief under 5 U.S.C. § 552(a)(4)(B).

### COUNT II

72.     AFL repeats paragraphs 1-69.

73.     AFL properly requested records within the possession, custody, and control of State.

74.     The requested records are not exempt from FOIA pursuant to 5 U.S.C. § 552(b)(5).

75.     State has improperly withheld the responsive records under FOIA pursuant to 5 U.S.C. § 552(b)(5) with no follow up response to date.

76.     Accordingly, AFL has exhausted its administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C).

77.     The Defendant State has violated FOIA by failing to provide a lawful reason for the withholding of the responsive records and segregate exempt information in otherwise non-exempt responsive records.

78.     AFL should be granted declaratory and injunctive relief under 5 U.S.C. § 552(a)(4)(B).

**<u>COUNT III</u>**

79.     AFL repeats paragraphs 1-76.

80.     AFL properly requested records within the possession, custody, and control of DHS.

81.     The requested records are not exempt from FOIA pursuant to 5 U.S.C. § 552(b)(5).

82.     DHS has improperly withheld the responsive records under FOIA pursuant to 5 U.S.C. § 552(b)(5) with no follow up response to date.

83.     Accordingly, AFL has exhausted its administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C).

84.     The Defendant DHS has violated FOIA by failing to provide a lawful reason for the withholding of the responsive records and segregate exempt information in otherwise non-exempt responsive records.

85.     AFL should be granted declaratory and injunctive relief under 5 U.S.C. § 552(a)(4)(B).

## VIII.    <u>**RELIEF REQUESTED**</u>

WHEREFORE, AFL respectfully requests this Court:

A.     Declare that the records sought by the request, as described in the foregoing paragraphs, must be disclosed pursuant to 5 U.S.C. § 552.

B.     Order the Defendants, Department of Justice, Department of State, and the Department of Homeland Security to conduct searches immediately for all records responsive to AFL's FOIA request and demonstrate that they employed search methods reasonably likely to lead to the discovery of responsive records.

C.     Order the Defendants to produce by a date certain, all non-exempt records responsive to AFL's FOIA request.

D.     Award AFL attorneys' fees and costs pursuant to 5 U.S.C. §552(a)(4)(E).

E.     Grant AFL such other and further relief as this Court deems proper.

Dated: July 6, 2023

Respectfully submitted,

_____/s/ *Michael Ding*_____
Juli Z. Haller (DC Bar No. 466921)
Michael Ding (DC Bar No. 1027252)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 670-3304
(202) 964-3721
E-mail: juli.haller@aflegal.org
E-mail: michael.ding@aflegal.org